USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __6/17/2021__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

H.C., individually and on behalf of J.C.,    :
a child with a disability,               :
                                    :

            Plaintiffs,    :

    -v-                           :
                                      :

NEW YORK CITY DEPARTMENT OF    :
EDUCATION,                        :
                                      :

            Defendant.    :

------------------------------------------------------------X

**OPINION & ORDER**

20-CV-844 (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

Before the Court is a motion by Plaintiffs, pursuant to the fee-shifting provisions of the Individuals with Disabilities Education Act, for attorneys' fees and costs for work performed by attorneys and paralegals at the Cuddy Law Firm. Defendant, the New York City Department of Education, opposes the motion, arguing that both the requested hourly rates and the number of hours expended are excessive and unreasonable. For the reasons set forth below, the Court grants the motion to the extent that it awards attorneys' fees and costs in the amount of $38,951.31, plus post-judgment interest.

## I.    BACKGROUND

### A. Factual Background

Plaintiff H.C. is the parent of Plaintiff J.C., a child classified as a student with autism by the DOE's Committee on Special Education ("CSE"). Complaint ("Compl."), Dkt. No. 1 ¶¶ 5, 10. On May 15, 2018, the Cuddy Law Firm ("CLF"), a

law firm specializing in cases brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, filed a Due Process Complaint ("DPC") on behalf of Plaintiffs, alleging that J.C. was denied a Free Appropriate Public Education ("FAPE") during the 2016-17 and 2017-18 school years in violation of the IDEA.  *Id.*  ¶¶ 11, 13; *see also* Declaration of Kevin M. Mendillo dated October 16, 2020 ("Mendillo Decl."), Ex. A, Dkt. No. 25-1 at 1.  The DPC requested that the DOE (1) provide J.C.'s complete educational records, (2) conduct six types of evaluations and assessments, (3) convene the CSE in order to consider the results and recommendations set forth the evaluations, and (4) provide various compensatory services.  Mendillo Decl. Ex. A at 6–8.  The case was assigned Impartial Hearing Office Case Number 173407.  Compl. ¶ 12.

A resolution session was held on June 1, 2018, during which the DOE agreed to perform four of the requested evaluations.  Mendillo Decl. ¶ 20; *see also* Declaration of Emily R. Goldman dated November 19, 2020 ("Goldman Decl."), Dkt. No. 35, ¶ 7.  Pre-hearing conferences were held on June 27, 2018, July 11, 2018, and August 7, 2018.  Mendillo Decl. ¶¶ 21–23; Goldman Decl. ¶¶ 8–10.[1]  During these pre-hearing conferences, the DOE declined to adopt a position as to whether and to what extent it would put on a defense.  Mendillo Decl. ¶¶ 21–23; *see also* Goldman Decl. Ex. A, Dkt. No. 35-1, at 7, 9; Goldman Decl. Ex. B, Dkt. No. 35-2, at 20; Goldman Decl. Ex. C, Dkt. No. 35-3, at 34, 36–37, 40.

---

[1] The June 27, 2018 conference lasted 15 minutes, the July 11, 2018 conference lasted six minutes, and the August 7, 2018 conference lasted 16 minutes. *See* Goldman Decl. Ex. A, Dkt. No. 35-1, at 1, 16; Goldman Decl. Ex. B, Dkt. No. 35-2, at 18, 26; Goldman Decl. Ex. C, Dkt. No. 35-3, at 28, 43.

A hearing on the merits was held on September 28, 2018.  Goldman Decl. Ex.
D, Dkt. No. 35-4.  The hearing lasted from 10:38 a.m. until 10:46 a.m.  *Id.* at 45, 55.
Kevin Mendillo of CLF appeared for Plaintiffs and introduced four exhibits.  *Id.* at
46.  The transcript reflects that Mendillo planned to offer a total of 22 exhibits, but
withheld those exhibits because the parties had resolved a number of outstanding
issues shortly before the hearing commenced.  *Id.* at 46–48; Mendillo Decl. ¶ 25.
The DOE appeared at the hearing but did not offer any evidence.  Goldman Decl.
¶ 11.

On October 11, 2018, the Impartial Hearing Officer ("IHO") issued Findings
of Fact and Decision ("FOFD") granting the relief Plaintiffs sought in their DPC.
*See* Mendillo Decl. Ex. C, Dkt. No. 25-3.  The IHO ordered the DOE to fund an
independent neuropsychological evaluation and authorize sessions for occupational,
physical, and speech-language therapy. *Id.* at 4–5.  The DOE had until October 26,
2018 to locate service providers.  *Id.*  The DOE did not appeal.  Goldman Decl. ¶ 13.

Between October 2018 and November 2018, H.C. expressed concern
regarding the individualized education program ("IEP") developed for J.C. by the
DOE's Committee on Special Education.  Mendillo Decl. ¶ 40.  Specifically, H.C. was
of the view that the IEP did not conform with the recommendations made by the
independent neuropsychological evaluator, Dr. Jeanne Deitrich.  *Id.*  Mendillo
communicated H.C.'s concerns to the DOE representative who appeared at the first
administrative hearing, but the parties were unable to resolve them.  *Id.* ¶¶ 40–41.

On November 28, 2018, Plaintiffs filed a second Due Process Complaint seeking an impartial hearing, contending that the DOE failed to provide J.C. a FAPE for the 2018-19 school year, and alleging nine separate violations of the IDEA.  Mendillo Decl. ¶¶ 42, 43; *see also* Mendillo Decl. Ex. D, Dkt. No. 25-4.  As relief, Plaintiffs requested that the IHO direct the DOE to amend J.C.'s IEP to include the recommendations set forth by Dr. Dietrich and place J.C. in a non-public New York State-approved school.  Mendillo Decl. Ex. D at 7–8 .  The case was assigned Impartial Hearing Office Case Number 179886.  Goldman Decl. ¶ 15.

Pre-hearing conferences were held on February 14, 2019, February 26, 2019, and April 1, 2019.  Goldman Decl. ¶¶ 17–19.[2]  During the conferences on February 14th and February 26th, the DOE took no position on settlement and did not state whether or to what extent it would defend the case.  *See* Goldman Decl. Ex. E, Dkt. No. 35-5, at 11; Goldman Decl. Ex. F, Dkt. No. 35-6.  During the April 1, 2019 pre-hearing status conference, the DOE stated that it would be defending J.C.'s IEP program for the 2018-19 school year.  Goldman Decl. Ex. G at 22–23.

A merits hearing was held on April 9, 2019 and lasted from 1:28 p.m. to 1:41 p.m.  Goldman Decl. Exh. H., Dkt. No. 35-8.  Plaintiffs entered 12 exhibits into the record.  *Id.* at 27–28; *see also* Mendillo Decl. ¶ 52.  The DOE objected to only one of Plaintiffs' exhibits.  Goldman Decl. Exh. H at 30.  Despite indicating at the April 1, 2019 status conference that it intended to defend the case, the DOE offered no

---

[2] The February 14, 2019 conference lasted 13 minutes, the February 26, 2019 conference lasted three minutes, and the April 1, 2019 conference lasted three minutes. Goldman Decl. Ex. E, Dkt. No. 35-5, at 1, 13; Goldman Decl. Ex. F, Dkt. No. 35-6 at 15–18; Goldman Decl. Ex. G, Dkt. No. 35-7, at 20, 24.

exhibits and chose to defer its opening statement to the next scheduled hearing date. *Id.* at 32.

On April 16, 2019, the second and final day of the hearing, Plaintiffs entered three additional exhibits and two affidavits into the record and called Dr. Jeanne Dietrich as a witness. Goldman Decl. Ex. I, Dkt. No. 35-9, at 44. During this hearing, the DOE advised the IHO that it would not defend the case and waived cross-examination of H.C. *Id.* at 46. Following the conclusion of the hearing (and per the request of the IHO), Plaintiffs submitted a closing brief requesting compensatory services and the placement of J.C. in a New York State-approved non-public school. *Id.* at 62–63; *see also* Mendillo Decl. ¶ 54.

On June 28, 2019, the IHO issued a FOFD ordering the DOE to place J.C. in a non-public school and to provide 300 hours of applied behavioral analysis tutoring services to J.C. over the next three years. Mendillo Decl. Ex. F, Dkt. No. 25-6, at 13. The DOE had 30 days to effectuate this placement. *Id.*; *see also* Mendillo Decl. ¶ 58. However, the DOE was unable to achieve J.C.'s placement by that date, and as a result Mendillo attempted to resolve the issue with the DOE over the course of the next several months. Mendillo Decl. ¶ 60.

On December 28, 2018, CLF submitted a request to the DOE for $30,697.25 for attorneys' fees and costs incurred for work performed in connection with Case No. 173407. Declaration of Andrew Cuddy dated October 16, 2020 ("Cuddy Decl."), Dkt. No. 26, ¶ 31; Goldman Decl. ¶ 24. The parties engaged unsuccessfully in settlement discussions until December 16, 2019. Cuddy Decl. ¶ 33; Goldman Decl.

¶ 24.  Plaintiffs did not make a formal demand for attorneys' fees and costs incurred for work performed in connection with Case No. 179886.  Cuddy Decl. ¶ 34.

**B. Procedural History**

On January 31, 2020, Plaintiffs commenced this action seeking attorneys' fees and costs incurred in connection with the two administrative proceedings and bringing claims under 42 U.S.C. § 1983 for the DOE's failure to comply with the IHO's FOFD in Case No. 179886.  Mendillo Decl. ¶ 66; Compl. ¶¶ 36–55.  On August 19, 2020, the parties settled the claims relating to the DOE's failure to implement the FOFD, thereby resolving the third and fourth causes of action set forth in the Complaint.  Mendillo Decl. ¶ 71.  On October 7, 2020, the DOE served Plaintiffs' counsel with an Offer of Settlement pursuant to 20 U.S.C. § 1415(i)(3)(D) in the amount of $40,000.01 to satisfy all claims for fees, costs, and expenses incurred or accrued in connection with the two administrative proceedings as well as this action.  Declaration of Lillian Wesley dated November 19, 2020 ("Wesley Decl."), Ex. A, Dkt. No. 34-1, at 2.  Plaintiffs rejected that offer and were unable to come to a resolution in subsequent discussions with the DOE.  Reply Declaration of Kevin M. Mendillo dated December 1, 2020 ("Mendillo Reply Decl."), Dkt. No. 39, ¶¶ 5–13.[3]

Plaintiffs moved for summary judgment on October 16, 2020.  Dkt. Nos. 24–31.  The DOE filed opposition papers on November 19, 2020.  Dkt. Nos. 34–38.

---

[3] The parties also participated in a settlement conference with the Court on March 8, 2021, which was also unsuccessful.  Dkt. No. 43.

Plaintiffs filed their reply papers on December 1, 2020.  Dkt Nos. 39–40.[4]  In total, Plaintiffs seek $92,531.19 in attorneys' fees and costs.  Cuddy Decl. ¶ 55; Mendillo Reply Decl. Ex. A, Dkt. No. 39-1, at 1.

## II.     DISCUSSION

### A. Applicable Law

The IDEA grants district courts the discretion to award "reasonable attorneys' fees" and costs to a "prevailing party."  20 U.S.C. § 1415(i)(3)(B)(I).  Its fee-shifting provisions are interpreted in the same manner as other civil rights fee-shifting statutes.  *See A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 73 (2d Cir. 2005).  When determining whether to award attorneys' fees under a federal fee-shifting statute such as the IDEA, a court must undertake a two-pronged inquiry.  *See, e.g., A.B. v. N.Y.C. Dep't of Educ.*, No. 20-CV-3129 (SDA), 2021 WL 951928, at *2 (S.D.N.Y. Mar. 13, 2021).  First, the court must determine "whether the party seeking the award is in fact a prevailing party."  *Id.*; *see also Mr. L. v. Sloan*, 449 F.3d 405, 407 (2d Cir. 2006).  "If the party is a prevailing party, the court must then determine whether, under the appropriate standard, that party should be awarded attorneys' fees."  *A.B.*, 2021 WL 951928, at *2.

A district court may award attorneys' fees if they are "reasonable" and "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of the services furnished."  20 U.S.C. § 1415(i)(3)(B)-(C); *see also A.R.*, 407 F.3d at 79.  To determine the amount of a prevailing party's fee award, a

---

[4] The parties have consented to my jurisdiction for all purposes under 28 U.S.C. § 636(c).  Dkt. No. 17.

court calculates a "presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours." *Bergerson v. New York State Office of Mental Health, Central New York Psychiatric Center*, 652 F.3d 277, 289 (2d Cir. 2011) (internal citation omitted); *see also Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019).

Here, the DOE does not dispute that Plaintiffs are "prevailing part[ies]" entitled to recover reasonable fees and costs under 20 U.S.C. § 1415(i)(3)(B) for the work performed in the two administrative proceedings. Defendant's Memorandum of Law in Opposition ("Def. Mem."), Dkt. No. 36, at 1. Accordingly, the Court turns to an analysis of the presumptively reasonable fee for Plaintiffs' counsel.

**B. Analysis**

1. <u>Hourly Rates</u>

When determining a reasonable hourly rate for an attorney or paralegal, courts consider both the prevailing market rates for such legal services as well as the case-specific factors articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 428 (S.D.N.Y. 2012) (citation omitted).  A court does not need to make specific findings as to each factor as long as it considers all of them when setting the fee award.  *See E.F. ex rel. N.R. v. N.Y.C. Dep't of Educ.*, No. 11-CV-5243 (GBD) (FM), 2014 WL 1092847, at *3 (S.D.N.Y. Mar. 17, 2014) (citations omitted); *see also Lochren v. Cty. Of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) ("*Arbor Hill* did not hold that district courts must recite and make separate findings as to all twelve *Johnson* factors.").

The DOE objects to the hourly rates sought by Plaintiffs' counsel and seeks to reduce them based upon the *Johnson* factors.  Def. Mem. at 7–13.  The Court considers below the hourly rates for each of Plaintiffs' timekeepers.[5]

a. <u>Kevin Mendillo ("Mendillo")</u>

Mendillo was lead counsel in the two administrative proceedings and is lead counsel in this action.  Mendillo Decl. ¶ 1.  Mendillo was admitted to practice in the State of New York in June 2011 and has practiced litigation since that time.  *Id.* ¶¶ 3–4.  In 2014, Mendillo joined CLF (previously Cuddy Law Firm, PC).  *Id.* ¶ 4. He presently specializes in special education law and has so specialized since joining CLF.  *Id.*  Plaintiffs seek a $400 hourly rate for Mendillo.  Cuddy Decl.

---

[5] Plaintiffs submit several affidavits from other attorneys that purport to establish the prevailing market rates for attorneys practicing special education law in this District.  Dkt. Nos. 27–29.  Courts in this District have determined that these types of affidavits are of limited value if they do not also provide the context necessary to properly apply the *Johnson* factors.  *See, e.g., R.G. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6851 (VEC), 2019 WL 4735050, at *2 n.4 (S.D.N.Y. Sept. 26, 2019); *M.D. v. N.Y.C. Dep't of Educ.*, No. 17-CV-2417 (JMF), 2018 WL 4386086, at *3 n.2 (S.D.N.Y. Sept. 14, 2018).  Because the attorney affidavits submitted by Plaintiffs do not provide enough context to apply the *Johnson* factors, the Court declines to accord them any weight.

¶¶ 51, 55.  Plaintiffs also seek a $200 hourly rate for Mendillo's travel time.  *Id.*

¶ 55.  The DOE argues that Mendillo should be awarded an hourly rate of $280 per

hour.  Def. Mem. at 11.

The appropriate hourly rate for CLF attorneys has been litigated many times

in this District in recent years.  In *C.D. v. Minisink Valley Central School District*,

for example, Judge Engelmayer awarded an hourly rate of $300 per hour to a CLF

attorney who had been practicing law for more than 10 years but who only began

specializing in special education law six years prior.  No. 17-CV-7632 (PAE), 2018

WL 3769972, at *6–7 (S.D.N.Y. Aug. 9, 2018).  Judge Engelmayer noted that

although the attorney had only six years of special education and IDEA litigation

experience, the attorney's generalist legal experience warranted a higher hourly

rate than is typically awarded to junior associates in IDEA litigation (between $150

–$275 per hour).  *Id.* at *7.  Like the attorney in *C.D.*, Mendillo has been practicing

law for more than 10 years, but only began specializing in special education law in

2014.  While Mendillo may have fewer years of IDEA litigation experience than the

senior attorneys at CLF, his years of general litigation experience warrant an

hourly rate higher than that of a junior associate.

Having considered all the *Johnson* factors, the Court finds that it is

appropriate to assign a $300 hourly rate to Mendillo's work in this matter.

Additionally, the Court assigns a $150 hourly rate for Mendillo's travel time.  *See*

*C.D.*, 2018 WL 3769972, at *10 ("Courts generally approve fees, at 50% of an

attorney['s] usual rate, for reasonable travel conducted in service of ongoing

litigation."); *see also S.J. v. N.Y.C. Dep't of Education*, No. 20-CV-1922 (LGS) (SDA), 2020 WL 6151112, at *4 (S.D.N.Y. Oct. 20, 2020), *adopted as modified by* 2021 WL 100501 (S.D.N.Y. Jan. 12, 2021).[6]

   b. <u>Michael J. Cuddy, Andrew Cuddy, and Jason Sterne</u>

   Plaintiffs seek a $500 hourly rate for three senior attorneys: Michael J. Cuddy ("M. Cuddy"), Andrew Cuddy ("A. Cuddy"), and Jason Sterne.  Cuddy Decl. ¶¶ 51, 55.  The DOE argues that M. Cuddy, A. Cuddy, and Sterne should be awarded an hourly rate of $350.  Def. Mem. at 11.

   "[T]he prevailing market rate for experienced, special-education attorneys in the New York area *circa* 2018 is between $350 and $475 an hour."  *R.G. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6851 (VEC), 2019 WL 4735050, at *2 (S.D.N.Y. Sept. 26, 2019); *see also M.D. v. N.Y.C. Dep't of Educ.*, No. 17-CV-2417 (JMF), 2018 WL 4386086, at *3 (S.D.N.Y. Sept. 14, 2018); *C.D.*, 2018 WL 3769972, at *6.

   In *M.D.*, which involved relatively straightforward administrative proceedings, Judge Furman awarded hourly rates of $360 per hour for senior CLF attorneys.  *M.D.*, 2018 WL 4386086, at *3.  In *C.D.*, Judge Engelmayer determined that A. Cuddy, who had been litigating IDEA cases since 2001, was entitled to $400 per hour, noting that he had been awarded $375 per hour in 2011.  *See C.D.*, 2018 WL 3769972, at *6 (citing *K.F. v. N.Y.C. Dep't of Educ.*, No. 10-CV-05465 (PKC), 2011 WL 3586142, at *1 (S.D.N.Y. Aug. 10, 2011)).  However, unlike the instant

---

[6] The Court is not aware of any other decisions that have considered Mendillo's hourly rate, and the parties have not cited to any.

case, the proceedings in *C.D.* were heavily contested and took place over the course of 11 hearing days. *See id.* at *2.

In *R.G.*, which involved a contested hearing that occurred over the course of three sessions totaling four hours, Judge Caproni awarded A. Cuddy and Sterne, who has been litigating IDEA cases since 2005, an hourly rate of $350. *See R.G.*, 2019 WL 4735050, at *2–3. In *C.B. v. N.Y.C. Dep't of Educ.*, Judge McMahon awarded a $400 hourly rate to A. Cuddy. No. 18-CV-7337 (CM), 2019 WL 3162177, at *6 (S.D.N.Y. July 2, 2019). In doing so, she distinguished the "$350-per hour and $360-per hour awards" in "essentially uncontested" cases from the case before her, in which "the DOE produced two of its own witnesses and submitted its own evidence in a proceeding that lasted 9.8 hours." *Id.* at *8. In *S.J.*, which involved an uncontested proceeding lasting less than two hours, Judge Schofield awarded A. Cuddy and M. Cuddy, who has been litigating IDEA cases since 2009, an hourly rate of $360. *S.J.*, 2021 WL 100501, at *3–4.

Having considered the parties' arguments, evidentiary submissions, and the *Johnson* factors, the Court finds that senior attorneys M. Cuddy, A. Cuddy, and Sterne be awarded a $360 hourly rate. Here, Plaintiffs filed two DPCs, leading to two administrative proceedings that spanned more than a year. However (and notwithstanding the DOE's non-committal stance on whether and to what extent it would defend the case), the proceedings were ultimately minimally contested, with the DOE objecting only to one exhibit and declining to offer testimony. Therefore, an hourly rate in line with the rates awarded in *M.D.*, *R.G.*, and *S.J.* is more

12

appropriate than the rates awarded in *C.D.* and *C.B* and is consistent with *Arbor Hill*, which requires a determination of "the cheapest hourly rate an effective attorney would have charged." *O.R. v. N.Y.C. Dep't of Educ.*, 340 F. Supp. 3d 357, 364 (S.D.N.Y. 2018) (citing *Arbor Hill*, 522 F.3d at 184).

c. <u>Charles Rooker</u>

Rooker was an associate at CLF from May 2018 to June 2019.  Cuddy Decl. ¶ 12.  Rooker was admitted to practice law in 2009 and practiced general litigation from 2009 until joining CLF in 2018, when he began working on IDEA litigation. *Id.*  "For associates with three or fewer years of experience in [IDEA] litigation, courts in this District have typically approved rates of $150–$275." *R.G.*, 2019 WL 4735050, at *3 (quotation omitted).  In *R.G.*, Judge Caproni assigned an hourly rate of $150 to a junior associate who graduated law school in 2015 and joined CLF in 2016.  *Id.*  However, unlike the junior associate in *R.G.*, Rooker has more than 10 years of general litigation experience, and the Court finds that background as a basis for adjusting Rooker's hourly rate somewhat higher.  *See S.J.*, 2020 WL 6151112, at *4 (adjusting hourly rate for junior associate higher when general litigation experience was relevant to work performed).  Having considered the parties' arguments, evidentiary submissions, and the *Johnson* factors, the Court assigns an hourly rate of $200 for work performed by Rooker.[7]

---

[7] As with Mendillo, the Court is not aware of other cases that have considered the appropriate hourly rate for Rooker, and the parties have not cited to any.

d. <u>Joanna Fox</u>

Both Plaintiffs and the DOE agree that the hourly rate for Joanna Fox, an associate at CLF, should be $100 per hour.  Cuddy Decl. ¶¶ 51, 55; Wesley Decl. Ex. B, Dkt. No. 34-2, at 1.  As a result, the Court will not analyze the appropriate hourly rate for Fox.

e. <u>Paralegals</u>

Plaintiffs also seek fees for work performed by several paralegals: Allison Bunnell, Amanda Pinchak, Sarah Woodard, Shobna Cuddy, Burhan Meghezzi, John Slaski, and Cailin O'Donnell.  Cuddy Decl. ¶ 55.  Paralegals, depending on skills and experience, have "generally garnered between $100 and $125 per hour in IDEA cases in this District."  *R.G.*, 2019 WL 4735050 at *3 (citations omitted).

The Court finds that $100 per hour is a reasonable hourly rate for each of the CLF paralegals in this case.  Bunnell worked as a paralegal at CLF from 2016 to 2019 after having served as an administrative assistant for an unspecified amount of time.  Cuddy Decl. ¶ 18.  Because Bunnell only has three years of paralegal experience, a $100 per hour is a reasonable hourly rate.  Pinchak worked as a paralegal at CLF from 2016 to 2019 and completed a paralegal certificate program in 2017.  *Id.* ¶ 19.  Although Pinchak completed a certification program, $100 is a reasonable hourly rate for a paralegal with Pinchak's level of practical experience.  Meghezzi holds a bachelor's degree in psychology and worked as a paralegal at CLF from October 2019 to June 2020.  *Id.* ¶ 21.  Given Meghezzi's limited experience as a paralegal, $100 per hour is a reasonable hourly rate.  Similarly, both Slaski and

O'Donnell are recent graduates with limited practical experience, and therefore $100 is a reasonable hourly rate.  Cuddy Decl. ¶¶ 20, 22.  Woodard worked as a paralegal at CLF from 2015 to 2019 after working as a legal assistant for nearly two decades.  *Id.* ¶ 17.  Although Woodard has many years of experience in the legal industry, her experience as a paralegal is relatively limited, and there is no evidence upon which the Court may infer that Woodard had anything beyond entry-level qualifications.  *See, e.g., C.D.*, WL 3769972, at *7 (lack of evidence regarding paralegal's qualifications warrants approval of hourly rate towards bottom end of $100 to $125 range).  Therefore, $100 per hour is a reasonable rate for Woodard. Lastly, Shobna Cuddy was a paralegal and office manager at CLF from 2007 to 2012, and since 2012 has served as the firm-wide office administrator.  Cuddy Decl. ¶ 15.  As with Woodard, while Plaintiffs have offered evidence regarding Cuddy's years of experience as a paralegal, there is no evidence as to Cuddy's qualifications. Therefore, $100 per hour is a reasonable rate for Cuddy.  *See, e.g., C.D.*, 2018 WL 3769972, at *7 (finding that $100 hourly rate is reasonable for S. Cuddy).

*       *       *

In sum, while the Court is mindful of the arguments that Plaintiffs have made to support their proposed rates, *Arbor Hill* held that a court must "step[] into the shoes of the reasonable, paying client, who wishes to pay the *least amount necessary to litigate the case effectively*."  *O.R.*, 340 F. Supp. 3d at 364 (quoting *Arbor Hill*, 522 F. 3d at 184).  In other words, as Magistrate Judge Gorenstein recently observed, "whether the attorneys on this case properly command the rates they seek

15

in the marketplace is not dispositive of the rate they are to be awarded." *Id.* Until the Second Circuit modifies the directives set forth in *Arbor Hill*, this Court is constrained to determine, as it has done here, the cheapest hourly rate an effective attorney would have charged.

2. <u>Hours Reasonably Expended</u>

Having determined the hourly rates for each timekeeper, the Court will now analyze the number of hours reasonably expended.

A fee award should compensate only those hours that were "reasonably expended" by the attorneys on this case. *See, e.g.*, *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006). "In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (internal citation omitted). Whether a case was "particularly complicated" or involved any "significant" legal issues may be considered in determining the reasonable number of hours a case requires. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011). District courts have "ample discretion" in assessing the "amount of work that was necessary to achieve the results in a particular case." *K.L. v. Warwick Valley Cent. Sch. Dist.*, No. 12-CV-6313 (DLC), 2013 WL 4766339, at *10 (S.D.N.Y. Sept. 5, 2013) (quoting *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992)), *aff'd*, 584 F. App'x 17 (2d Cir. 2014).

Ultimately, "'trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection.'"  *C.B.*, 2019 WL 3162177, at *5 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).  To calibrate an appropriate award, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award" by a reasonable percentage.  *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983); *see also McDonald*, 450 F.3d at 96 ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application.") (internal quotation marks and citation omitted).  With this background in mind, the Court considers first the hours expended in connection with the administrative proceedings and then the hours expended in connection with this action.

a.  First Administrative Proceeding (Case No. 173407)

Plaintiffs seek $29,625.00 in fees for 121.4 hours of attorney and paralegal time spent on the first administrative proceeding (Case No. 173407).  Cuddy Decl. ¶ 55.  The DOE argues that the hours billed should be reduced by 35% because the pre-hearing conferences and hearing itself were brief and generally uncontested, and because Plaintiffs' attorneys spent excessive hours on hearing preparation and administrative tasks.  Def. Mem. at 14.  Plaintiffs contend that a reduction of hours billed is inappropriate because the hours expended were reasonable.  Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment ("Pl. Mem."), Dkt. No. 31 at 21–24.  Plaintiffs also argue that a reduction of hours is

inappropriate because the DOE unreasonably protracted the final resolution of the proceeding by (1) failing to offer any substantive relief at the resolution session held on June 1, 2018; (2) failing to adopt a consistent position on whether the DOE would defend the case; and (3) delaying implementation of the FOFDs.  Pl. Mem. at 10–11; *see also* 20 U.S.C. § 1415(i)(3)(G).

As an initial matter, the Court finds that any protraction on the DOE's part did not rise to the level of being "unreasonable."  In *S.J.*, the plaintiffs argued that the DOE unreasonably protracted the resolution of the DPC because the DOE's representative was unresponsive, leading to significant delays in the administrative proceedings.  *See* Plaintiffs' Memorandum of Law in Support of Summary Judgment at 6–8, in *S.J. v. N.Y.C. Dep't of Educ.*, No. 20-CV-1922 (LGS) (SDA), 2021 WL 100501 (Jan. 12, 2021), Dkt. No. 36.  Similarly, in *R.G.*, the plaintiffs argued that the DOE unreasonably protracted the resolution of the DPC because the DOE representative made initial representations that it wished to settle the case and further delayed the hearing by arriving late and unprepared.  *See* Plaintiffs' Memorandum of Law in Support of Summary Judgment, at 5–6, in *R.G. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6851 (VEC), 2019 WL 4735050 (S.D.N.Y. Sept. 26, 2019), Dkt. No. 26.  In both *S.J.* and *R.G.*, the court found that the DOE did not unreasonably protract the final resolution of the action.  *See S.J.*, 2021 WL 100501, at *4; *R.G.*, 2019 WL 4735050, at *1 n.2.

Here, any actions on the part of the DOE that may have prolonged or delayed the resolution of the DPCs are no less reasonable than the DOE's actions in *R.G.*

and *S.J.*  While the DOE did not fully resolve the DPC at the June 1, 2018

resolution session, it did agree to perform several of the evaluations Plaintiffs

requested.  Mendillo Decl. ¶ 20; Goldman Decl. ¶ 7.  At subsequent pre-hearing

conferences, it was not unreasonable for the DOE to request more time to

investigate and review the results of those evaluations.[8]

The Court has reviewed the hours billed by Plaintiffs' counsel in connection

with the first administrative proceeding as well as the DOE's challenges, and

concludes that a 20% reduction of hours expended is appropriate here.  *See* Cuddy

Decl. Ex. A, B, C, Dkt. Nos. 26-1, 26-2, 26-3; *see also* Def. Mem. at 13–22.

First, the hours spent on preparing the DPC were excessive.  The DOE urges

the Court to rely on *R.G.* in reducing the hours spent preparing the DPC, Def. Mem.

at 15, but unlike in *R.G.*, Plaintiffs have offered evidence indicating that the records

in this case were voluminous.[9]  However, the DPC consisted of only eight pages and

mostly constituted a chronological recitation of J.C.'s educational history.[10]

---

[8] As the parties are well aware, attorneys' fees litigation pursuant to the IDEA has become increasingly common in this District (at least with respect to Plaintiffs' counsel).  The Court strongly encourages the DOE to avail itself of the resolution sessions to actually resolve DPCs (or at the very least, provide clarity on its position in the case), thereby reducing the amount of attorneys' fees and expenses incurred (and potentially reducing the number of IDEA attorneys' fees lawsuits as well).

[9] Dkt. No. 26-1 at 4 (01/18/2018 and 01/22/2018 entries).

[10] The DOE also contends that it was unnecessary to have two attorneys (Fox and Mendillo) work on the DPC and then have two senior attorneys (Cuddy and Sterne) review the DPC. Def. Mem. at 15–16.  However, the Court is of the view (and most would agree) that writing benefits from an editor.  *See, e.g.*, *R.G.*, 2019 WL 4735050, at *4 n.6 (not unreasonable for attorney to review and edit another attorney's work). Moreover, the Court finds it justifiable that Fox, who bills at a substantially lower rate than Mendillo, Cuddy, and Sterne, did most of the reviewing of documents and

Next, several hours billed by Mendillo, Pinchak, and Bunnell were for tasks that were administrative and/or secretarial in nature (such as scheduling correspondence and saving records), further warranting a modest reduction.  Def. Mem. at 16; *see also O.R.*, 340 F. Supp. 3d at 368 (reducing hours for tasks that were secretarial or clerical).

The DOE also seeks a reduction for attorney and paralegal hours billed for preparing and reviewing billing statements.  Def. Mem. at 16.  While time spent preparing a fee submission (including compiling time entries) is compensable, attorney and paralegal time spent reviewing and editing the billing statement for clarity should not be compensated.  *See, e.g.*, *R.G.*, 2019 WL 4735050, at *4 (allowing hours for fee-memo preparation and time entry compilation, but disallowing fees for time spent on "administrative clean-up" of time entries).  The DOE also contends that "the IDEA disallows any award spent preparing for a resolution session meeting (RSM)."  Def. Mem. at 17.  However, in *M.K. v. Arlington Central School District*, Judge Román found that this prohibition applied only to time spent at the resolution session itself, rather than any time spent preparing for the session.  No. 16-CV-5751 (NSR), 2019 WL 92004, at *7 (S.D.N.Y. Jan. 3, 2019) (citing *D.D. ex rel. Davis v. District of Columbia*, 470 F. Supp. 2d 1, 2 (D.D.C. 2007)).  A 20% reduction of the hours expended accounts for any hours billed for these tasks.

In addition, the Court finds that, with a 20% reduction, CLF spent a reasonable number of hours preparing for the September 28, 2018 hearing and any

---

drafting while the more experienced attorneys reviewed her work and offered specialized expertise when needed.  *See, e.g.*, *C.D.*, 2018 WL 3769972, at *9.

post-hearing briefing.  The DOE contends that CLF's time spent on these tasks was excessive because the hearing was "uncontested" and "lasted under an hour."  Def Mem. at 17; Goldman Decl. ¶ 14.  However, Plaintiffs correctly note that the hearing only became "uncontested" at the eleventh hour, and therefore it was reasonable for Mendillo to spend a number of hours on preparation.  Mendillo Decl. ¶ 26.  At the time of the hearing preparation, Mendillo was uncertain whether the DOE would be putting on a case and had prepared to introduce 22 exhibits in order to secure the requested relief.  Goldman Decl. Ex. D at 46.

With respect to travel time, the DOE argues that Mendillo's 15 hours billed to travel should be reduced to one hour each way (for a total of four hours over two trips), pursuant to *C.D. v. Minisink Valley Central School District*.  Def. Mem. at 17; Wesley Decl. Ex. B at 1.  However, in *C.D.*, the IHO hearings were held in Slate Hill, New York, and only required CLF attorneys to travel approximately three hours and 15 minutes from the firm's headquarters in Auburn, New York.  2018 WL 3769972, at *10.  Here, Mendillo made the trip from Auburn to Brooklyn, a trip that, by the Court's calculation, takes approximately five hours in each direction.[11] Accordingly, this warrants an adjustment from Judge Engelmayer's calculation in *C.D.*, and the Court finds that Mendillo's travel time should be reduced in half to

---

[11] The Court takes judicial notice under Rule 201 of the Federal Rules of Evidence of the fact that, according to Google Maps, Auburn is approximately five hours from Brooklyn. *See Deutch v. United States*, 367 U.S. 456, 470 (1961) ("tak[ing] judicial notice of the fact that Ithaca is more than one hundred and sixty-five miles from Albany"); *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 265 n.10 (S.D.N.Y. 2014) (taking judicial notice of distance between two places according to Google Maps).

2.5 hours in each direction, for a total of 10 hours of travel time spent on the two

trips for the first administrative proceeding.[12]

    b. <u>Second Administrative Proceeding (Case No. 179886):</u>

      Plaintiff seeks reimbursement for 94.1 hours spent on the Second

Administrative Proceeding.  Cuddy Decl. ¶ 55.  The DOE argues a 20% reduction of

these hours is appropriate, and the Court agrees with that assessment.  Def. Mem.

at 18.  The DPC for the second hearing contained much of the same information as

the DPC for the first hearing. *Compare* Mendillo Decl. Ex. A, Dkt. No. 25-1 *with*

Mendillo Decl. Ex. D, Dkt. No. 25-4.  In addition, both Mendillo and Pinchak billed

time for tasks that were seemingly administrative or secretarial in nature, further

supporting a reduction of hours billed.[13]  While the Court disagrees with the DOE's

contention that the second hearing was "uncontested," the Court finds that the

relatively narrower scope of the second hearing and the more limited nature of

Plaintiffs' case (demonstrated by the fewer number of exhibits and the presentation

of only one witness) warrants a modest reduction in the hours billed.

      With respect to Mendillo's travel time in connection with the second hearing,

as discussed above, 2.5 hours of time in each direction is reasonable here, for a total

travel time of 5.0 hours spent for the second administrative proceeding.

---

[12] Mendillo traveled to Brooklyn twice during the first administrative proceeding: on June 27, 2018 for the pre-hearing conference and on September 28, 2018 for the merits hearing.  Mendillo Decl. ¶¶ 32, 34.

[13] Cuddy Decl. Ex. B, Dkt. No. 26-2 (entries for 12/4/18, 12/7/18, 12/12/18, 12/20/18, 1/8/19, 1/29/19, 1/31/19, 2/1/19, 2/5/19, 2/6/19, 2/11/19, 2/27/19, 3/12/19, 3/13/19, 3/18/19, 4/3/19, 4/4/19, 4/8/19, 4/10/19, 4/12/19, 5/20/19, 5/31/19).

In sum, after careful consideration of the record before the Court and applying the relevant legal standards, the Court awards attorneys' fees to Plaintiff's counsel for the two administrative hearings as follows:

**Case No. 173407**

| Timekeeper: | Hourly Rate: | Hours: | Total: |
|---|---|---|---|
| A.Cuddy | $360 | 2.72 | $979.20 |
| M. Cuddy | $360 | 0.96 | $345.60 |
| K. Mendillo | $300 | 33.52 | $10,056.00 |
| K. Mendillo (travel) | $150 | 10.00 | $1,500.00 |
| J. Sterne | $360 | 0.56 | $201.60 |
| J. Fox | $100 | 26.64 | $2,664.00 |
| A. Bunnell | $100 | 4.16 | $416.00 |
| A. Pinchak | $100 | 12.88 | $1,288.00 |
| S. Woodard | $100 | 0.8 | $80.00 |
| S. Cuddy | $100 | 2.8 | $280.00 |
| B. Meghezzi | $100 | 0.08 | $8.00 |
| **TOTAL FEES** | | | **$17,818.40** |

**Case No. 179886**

| Timekeeper: | Hourly Rate: | Hours: | Total: |
|---|---|---|---|
| A. Cuddy | $360 | 1.04 | $374.40 |
| K. Mendillo | $300 | 25.52 | $7,656.00 |
| K. Mendillo (travel) | $150 | 5.00 | $750.00 |
| C. Rooker | $200 | 30.88 | $6,176.00 |
| J. Sterne | $360 | 0.24 | $86.40 |
| A. Bunnell | $100 | 2.32 | $232.00 |
| A. Pinchak | $100 | 6.64 | $664.00 |
| S. Cuddy | $100 | 0.8 | $80.00 |
| J. Slaski | $100 | 1.44 | $144.00 |
| **TOTAL FEES** | | | **$16,162.80** |

   c.  <u>Federal Court Litigation</u>

Plaintiffs seek an award of fees for 67.1 hours billed for the federal court litigation by A. Cuddy, Mendillo, Justin Coretti (an attorney who served process on DOE), and paralegals S. Cuddy and O'Donnell. Mendillo Reply Decl. Ex. A at 1.[14] The DOE contends that the hours billed in connection with the federal court litigation should be reduced by 25%. Def. Mem. at 21. The Court acknowledges the

---

[14] Plaintiffs seek to recover for an amount billed by Coretti for service of process. However, it is inappropriate to charge attorney time for service of process. *See, e.g.*, *S.J.*, 2020 WL 6151112, at *6 n.11 (declining to credit time billed by attorney for serving process). Therefore, the Court will not award any fees for the time billed by Coretti for serving process.

DOE's arguments that CLF used the same template for its complaint and summary judgment motion papers that it has used in other cases.  Nonetheless, several facts warrant a slightly more modest reduction of the hours expended.  Unlike many of CLF's other IDEA fee-litigations, CLF's complaint in this case was not confined to the issue of attorneys' fees, but also sought equitable relief under 42 U.S.C. § 1983.  Therefore, a more modest reduction of hours is appropriate on this basis.  *Compare* Compl. ¶¶ 41–54 *with* Complaint, *R.G. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6851 (VEC), 2019 WL 4735050 (S.D.N.Y. Sept. 26, 2019), Dkt. No. 1 (complaint three pages long and confined to issue of attorneys' fees).  However, these substantive claims were resolved shortly after the filing of the complaint, leaving the attorneys' fees award as the only remaining issue to be addressed.  Mendillo Decl. ¶ 71.  As a result, the Court finds that the hours billed to prepare the motion was excessive, and therefore a 20% reduction in the number of hours billed to the federal litigation is appropriate.

The DOE also contends that no fees should be awarded for work performed after October 7, 2020, the date of the DOE's $40,000.01 Offer of Settlement.  Def. Mem. at 23–24.  The IDEA's fee-shifting provisions prohibit an award of fees and costs for work performed after a written offer of settlement is made within 14 days before the date set for trial but not accepted within 10 days if "the court . . . finds that the relief finally obtained by the parents is not more favorable to the parents than the offer."  20 U.S.C. § 1415(i)(3)(D)(i).  In *O.R.*, Magistrate Judge Gorenstein declined to award fees and costs incurred after the Offer of Settlement date because,

after applying reductions to the attorneys' hourly rates and hours expended, the fees and costs plaintiff was entitled to through the Offer of Settlement date was less than the offered settlement amount.  340 F. Supp. 3d at 371.  Conversely, in *C.B.*, Judge McMahon found that the fees and costs plaintiff was entitled to through the DOE's Offer of Settlement date exceeded the offered settlement amount, and therefore awarded fees for work performed after that date (though at a significantly reduced rate).  2019 WL 3162177, at *11–12.

Here, by the Court's calculations and applying the reductions discussed above, Plaintiffs were entitled to $37,984.40 in attorneys' fees and costs through October 7, 2020.[15]  Because this amount is less than the $40,000.01 the DOE offered on October 7, 2020, the Court will not award any fees or costs incurred after that date.

In sum, after reviewing the record and applying the relevant legal standards, the Court awards attorneys' fees to Plaintiffs' counsel for the federal action as follows:

---

[15] To calculate this total, the Court looked to the final invoice for the federal action. *See* Mendillo Reply Decl. Ex A.  The Court then subtracted any hours billed after October 7, 2020, and applied the hourly rate and hours expended reductions as discussed above.

| Timekeeper: | Hourly Rate: | Hours: | Total: |
|---|---|---|---|
| A. Cuddy | $360 | 0.32 | $115.02 |
| K. Mendillo | $300 | 10.8 | $3,240 |
| J. Coretti | $90 | 0 | $0.00 |
| S. Cuddy | $100 | 1.44 | $144.00 |
| C. O'Donnell | $100 | 1.04 | $104.00 |
| **TOTAL FEES** | | | **$4,003.20** |

  d. <u>Costs/Expenses</u>

  "A district court may award reasonable costs to the prevailing party in IDEA cases." *C.D.*, 2018 WL 3769972, at *12 (citing 20 U.S.C. § 1415(i)(3)(B)(i)(1)).  The DOE argues that Plaintiffs' counsel is not entitled to mileage, lodging, or parking costs stemming from their travel from Auburn to Brooklyn.  Def. Mem. at 23.  The DOE also contends that Plaintiff's fax and printing expenses are excessive.  *Id.*

  The Court declines to award any lodging expenses.  *See R.G.*, 2019 WL 4735050, at *6; *see* also *C.D.*, 2018 WL 3769972, at *13 ("[T]he Court will not award any costs for lodging.  An attorney who was sited within a reasonable distance of the hearing location could commute daily to the hearings, obviating any need for lodging.").  "A reasonable client, in the Court's judgment, could not agree to pay in-district attorney rates while also paying for extensive lodging expenses necessitated by out-of-district attorneys' travel."  *C.D.*, 2018 WL 3769972, at *13; *see also K.F.*, 2011 WL 3586142, at *6 ("[I]t is doubtful that a reasonable client would retain an

Auburn or Ithaca attorney over a New York City attorney if it meant paying New York City rates and an additional five hours in billable time for each trip."). Accordingly, the Court deducts all of Mendillo's lodging entries ($604.40 and $231.33). Cuddy Decl. ¶ 55.

The Court also concludes that the requested transportation costs are unreasonable. Mendillo billed $408.75 and $145.00 for mileage in connection with the two administrative proceedings. Cuddy Decl. ¶ 55. Local counsel attending a hearing in Brooklyn would likely take public transit or some form of commuter rail or a short car ride. *See, e.g.*, *R.G.*, 2019 WL 4735050 at *6. The Court finds $50 each way to be reasonable reimbursement for transportation costs. The Court also deducts Mendillo's $90.00 and $45.00 parking costs. Cuddy Decl. ¶ 55.

The Court agrees with the DOE that $0.50 per page for photocopying is excessive. Def. Mem. at 23. District courts in New York "routinely reduce [] requests for photocopying reimbursement to 10–15 cents per page." *Febus v. Guardian First Funding Grp., LLC*, 879 F. Supp. 2d 337, 341 (S.D.N.Y. 2012); *see also R.G.*, 2019 WL 4735050, at *6. While there has undoubtedly been some inflation since 2012, district courts continue to find that $0.10 per page is an "entirely reasonable compensation for printing costs, absent any indication in the record why the copies in this case are exceptionally expensive." *R.G.*, 2019 WL 4735050, at *6. The reasonable cost of printing 1,835 pages for the first administrative hearing (Case No. 173407) and 747 pages for the second administrative hearing (Case No. 179886) is therefore $183.50 and $74.70,

respectively.[16]  Though the parties do not specifically discuss the $34.00 and $24.00

fax costs, the Court finds that these costs are unreasonable.  *See, e.g.*, *R.G.*, 2019

WL 4735050, at *6 (denying fax costs when plaintiffs made no showing why

communicating via fax was necessary or appropriate, especially given that

"[m]odern copy machines have the ability to scan documents so that they can be

emailed, a method of communication that costs virtually nothing.").

In light of the above, the Court awards Plaintiffs' counsel $996.91 in costs, as

summarized below:

Case No. 173047

| Expense: | Total: |
|---|---|
| Copying @ $0.10 per page | $183.50 |
| Travel @ $50.00 per direction | $200.00 |
| Postage | $0.94 |
| **TOTAL:** | **$384.44** |

---

[16] By the Court's calculation, Plaintiffs photocopied 1,835 pages in connection with Case No. 173047 and 747 pages in connection with Case No. 179886.  *See* Cuddy Decl. ¶ 55.

Case No. 179886

| Expense: | Total: |
|---|---|
| Copying @ $0.10 per page | $74.70 |
| Travel @ $50.00 per direction | $100.00 |
| Postage | $7.77 |
| **TOTAL:** | **$182.47** |

Federal Action:

| Expense: | Total: |
|---|---|
| Filing Fee | $400.00 |
| **TOTAL:** | **$400.00** |

  e.  Post Judgment Interest

Lastly, Plaintiffs seek post-judgment interest on the award granted.  Pl. Mem. at

25.  Plaintiffs' request for post-judgment interest is granted.  *See S.J.*, 2021 WL

100501, at *6 (pursuant to 28 U.S.C. § 1961, "the award of post-judgment interest is

mandatory on awards in civil cases as of the date judgment is entered.").

### III.   CONCLUSION

For the reasons set forth above, Plaintiffs are awarded a total of $38,951.31 in attorneys' fees and costs, plus post-judgment interest.  The Clerk of Court is respectfully directed to enter judgment in Plaintiffs' favor for that amount, terminate all open motions, and close this case.

**SO ORDERED.**

Dated: June 17, 2021
        New York, New York

_____
JAMES L. COTT
United States Magistrate Judge